IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

PENNSYLVANIA NATIONAL MUTUAL
CASUALTY INSURANCE COMPANY,

       Plaintiff,

vs.

TATE ANDALE, INC.,

       Defendant.

Civil Action No. ADC-17-0670

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Defendant/Counterclaim Plaintiff, Tate Andale, Inc., moves this Court for summary judgment ("Defendant's Motion") (ECF No. 50). Defendant seeks a ruling from the Court that it has produced clear and positive evidence of the existence and terms of insurance policies allegedly issued by Plaintiff. Plaintiff/Counterclaim Defendant, Pennsylvania National Mutual Casualty Insurance Company, filed an opposition to Defendant's Motion and a cross-motion for summary judgment ("Plaintiff's Cross-Motion") (ECF No. 52).

After considering the motions and responses thereto (ECF Nos. 51, 53, 55, 57), the Court finds that no hearing is necessary. *See* Loc.R. 105.6 (D.Md. 2018). In addition, having reviewed the pleadings of record and all competent and admissible evidence submitted by the parties, the Court finds that there is a genuine issue of material fact as to the claims asserted. Accordingly, the Court will DENY Defendant's Motion (ECF No. 50) and DENY Plaintiff's Cross-Motion (ECF No. 52).

1

## FACTUAL BACKGROUND

This lawsuit arises out of a controversy surrounding the existence and terms of commercial liability insurance policies allegedly issued by Plaintiff to Defendant for coverage stemming from 1958 to 1964. Defendant is a Maryland corporation that was incorporated in 1957 under the name Temco Machine Works, Inc. ECF No. 50-6 at 2–4. In 1966, Temco Machine Works, Inc. changed its name to Tate Temco, Inc. *Id.* at 7. In 1985, Tate Temco, Inc. changed its name to Tate Andale, Inc., which is Defendant's current operating name. *Id.* at 11–12. Defendant designs and manufactures a variety of industrial products, including industrial strainers and filters, and has "used asbestos-containing materials in its[] industrial processes and/or products." ECF No. 1 at 3; ECF No. 22 at 8. Plaintiff is a Pennsylvania corporation that sells an array of insurance coverage.[1] *See* ECF No. 1 at 1, 3.

On October 17, 2016, Defendant wrote a letter to Plaintiff which claimed that Plaintiff and its predecessor issued six insurance policies providing commercial liability coverage to Defendant effective September 20, 1958 to March 9, 1964 and that under these policies, Plaintiff was obligated to indemnify Defendant for asbestos claims by third parties. ECF No. 1-1 at 2–3. On December 6, 2016, Defendant sent Plaintiff a correspondence alleging that it had settled multiple asbestos-related claims within the coverage of the alleged policies for $1,720,000, plus $1,606,106 in defense costs, and demanding that Plaintiff "immediately acknowledge and fulfill its coverage obligations." ECF No. 1-2 at 3–4. Plaintiff subsequently searched its business records and did not find anything to support Defendant's claim that Plaintiff issued any commercial liability insurance policies to Defendant. ECF No. 1 at 4–5; ECF No. 53-6, ¶¶ 12–19; ECF No. 53-19, ¶¶ 2–8.

---

[1] Plaintiff's predecessor in interest is Pennsylvania Threshermen's and Farmer's Mutual Casualty Company. ECF No. 1 at 3.

Defendant then provided copies of "secondary evidence" purported to support its position, including an insurance schedule prepared by its insurance broker, a notice of claim, and a February 18, 1994 letter from Plaintiff, but not a copy of the alleged policies because Defendant does not possess a copy.[2] ECF No. 22 at 9–10.

Additionally, Defendant provided several documents relating to an asbestos bodily injury claim brought by Charles Danielson around 1986. ECF Nos. 50-14, 50-15, 50-16, 50-17, 50-18, 50-19, 50-20. Included in these documents is a check dated August 6, 1987 that appears to be issued by Plaintiff to Defendant in the amount of $833.54 for "[p]ro-rata share of incurred expenses" in the Danielson claim. ECF No. 50-18 at 3. Defendant relies upon this check and the other Danielson documents to demonstrate that Plaintiff had previously provided coverage for an asbestos-related claim during the relevant period. ECF No. 50-1 at 10–11.

## PROCEDURAL BACKGROUND

On March 9, 2017, Plaintiff filed this lawsuit against Defendant, seeking a declaratory judgment that Plaintiff did not issue any commercial liability policy of insurance to Defendant and that if any policy existed, Defendant was not entitled to coverage under such policy, plus a reservation of rights count. ECF No. 1. On May 12, 2017, Defendant filed a motion to dismiss Plaintiff's reservation of rights count. ECF No. 8. Upon reviewing the motion and the responses thereto (ECF Nos. 12, 13), on February 6, 2018, the Court granted Defendant's motion, dismissing the reservation of rights count of Plaintiff's complaint. ECF No. 21.

---

[2] Many of Defendant's corporate records were destroyed in a fire in 1965. ECF No. 50-1 at 4; ECF No. 50-2, ¶ 5; ECF No. 50-9. Similarly, Plaintiff does not possess the alleged policies due to its record retention policy, which directs that policy documents be destroyed after 25 years. ECF No. 50-32 at 16.

3

On February 21, 2018, Defendant filed an answer and counterclaim. ECF No. 22.[3] The counterclaim sought a declaratory judgment that Plaintiff issued the commercial liability policies of insurance and is obligated to provide coverage for costs associated with past, present, and future asbestos litigation. *Id.* at 13–14. The counterclaim also included a claim for breach of contract and statutory failure to act in good faith pursuant to section 3-1701 of the Courts and Judicial Proceedings Article of the Maryland Code. *Id.* at 14–16. Plaintiff filed a motion to dismiss on March 14, 2018. ECF No. 32. On March 28, 2018, Defendant opposed the motion to dismiss, ECF No. 34, and on April 11, 2018, Plaintiff filed a reply, ECF No. 35. In a memorandum opinion dated April 19, 2018, the Court granted the motion in part and denied in part, dismissing only the statutory failure to act in good faith claim. ECF No. 36.

On October 5, 2018, Defendant filed Defendant's Motion, seeking summary judgment in its favor on all claims asserted by Plaintiff and all remaining counterclaims. ECF No. 50. On October 26, 2018, Plaintiff filed an opposition to the statement of undisputed facts contained in Defendant's Motion, ECF No. 51, as well as its opposition to Defendant's Motion and Plaintiff's Cross-Motion, ECF Nos. 52, 53. On November 16, 2018, Defendant filed its opposition to Plaintiff's Cross-Motion and a reply. ECF No. 55. Finally, on December 7, 2018, Plaintiff filed a reply. ECF No. 57.

This matter is now fully briefed and the Court has reviewed both parties' cross-motions for summary judgment, as well as the responses thereto. For the foregoing reasons and pursuant to

---

[3] On March 13, 2018, in accordance with 28 U.S.C. § 636 and Local Rules 301 and 302 of the United States District Court for the District of Maryland and upon consent of all parties, this case was transferred to United States Magistrate Judge A. David Copperthite for all proceedings. ECF No. 27.

Federal Rule of Civil Procedure 56(a), Defendant's Motion (ECF No. 50) is DENIED and Plaintiff's Cross-Motion (ECF No. 52) is DENIED.

## DISCUSSION

### A. Standard of Review

Pursuant to Rule 56, a movant is entitled to summary judgment where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The Supreme Court has clarified that not every factual dispute will defeat a motion for summary judgment but rather, there must be a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) ("[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." (emphases in original)). An issue of fact is material if, under the substantive law of the case, resolution of the factual dispute could affect the outcome. *Id.* at 248. There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012). On the other hand, if after the court has drawn all reasonable inferences in favor of the nonmoving party, "the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (internal citations omitted).

The party seeking summary judgment bears the initial burden of either establishing that no genuine issue of material fact exists or that a material fact essential to the non-movant's claim is absent. *Celotex Corp.*, 477 U.S. at 322–24. Once the movant has met its burden, the onus is on the non-movant to establish that there is a genuine issue of material fact. *Matsushita Elec. Indus.*

5

*Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In order to meet this burden, the non-movant "may not rest upon the mere allegations or denials of [its] pleadings," but must instead "set forth specific facts showing that there is a genuine issue for trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting Fed.R.Civ.P. 56(e)).

Here, both parties moved for summary judgment. "When faced with cross-motions for summary judgment, the court must review each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law," and in considering each motion "the court must take care to resolve all factual disputes and any competing, rational inferences in the light most favorable to the party opposing that motion." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (citations and internal quotation marks omitted); *see also United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in such materials must be viewed in the light most favorable to the party opposing the motion."). At the same time, the court also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)). The fact that both sides moved for summary judgment "neither establish[es] the propriety of deciding a case on summary judgment nor establish[es] that there is no issue of fact requiring that summary judgment be granted to one side or another." *Cont'l Airlines, Inc. v. United Airlines, Inc.*, 277 F.3d 499, 511 n.7 (4th Cir. 2002) (internal citations and quotation marks omitted). "The court must deny both motions if it finds there is a genuine dispute of material fact, 'but if there is no genuine issue and one or the other party is entitled to prevail as a matter of law, the court will

render judgment.'" *Rashid v. Wash. Metro. Area Transit Auth.*, No. DKC 17-0726, 2018 WL 1425978, at *4 (D.Md. Mar. 22, 2018) (citation omitted).

**B. Cross-Motions for Summary Judgment**

In their respective motions, Plaintiff and Defendant each seek summary judgment on all remaining claims, which includes Plaintiff's declaratory judgment claim and Defendant's breach of contract counterclaim. The Court will first address the declaratory judgment claim before turning to the breach of contract counterclaim.

1. Summary Judgment Is Inappropriate On The Declaratory Judgment Claim.

Defendant argues that it is entitled to summary judgment on the declaratory judgment claim because it has produced sufficient evidence of the existence and terms of the alleged insurance policies. ECF No. 50-1 at 10–18. Plaintiff, on the other hand, argues that it is entitled to summary judgment because Defendant has not met its burden under Maryland law to present "clear and positive" evidence of the existence and terms of the policies. ECF No. 53 at 12–25 (quoting *Klopman v. Zurich Am. Ins. Co. of Ill.*, 233 F.App'x 256, 258 (4th Cir. 2007)).

"Because the instant case is a diversity dispute between alleged parties to an insurance contract, Maryland law governs as to the burden of proof [Defendant] must meet." *Id.* Under Maryland law, "the proponent of a lost insurance policy 'must establish the fact of loss and the terms and conditions of the policies by "clear and positive" evidence.'" *Id.* (quoting *In re Wallace & Gale Co.*, 275 B.R. 223, 230 (D.Md. 2002)). "Maryland courts have not yet clarified whether the 'clear and positive' standard approximates the 'mere preponderance' standard or the 'clear and convincing' standard. Accordingly, federal courts in Maryland have sometimes chosen one standard and sometimes chosen the other." *Id.* (citations omitted). In light of this ambiguity, courts have proceeded "with the understanding that [the] evidence must at least 'leave no

7

reasonable doubt' as to the existence and the terms and conditions of the insurance policy." *Id.* at 259.

    a. There Is A Genuine Issue Of Material Fact As To The Existence Of The Alleged Insurance Policies.

Both parties contend in their motions that they are entitled to summary judgment and ask the Court to determine if the policies allegedly issued by Plaintiff were in existence. The parties, however, proffer contradictory evidence regarding the existence of the policies, which gives rise to their competing theories. As a result, there is a significant dispute of material fact affecting the outcome of the case and preventing the Court from entering summary judgment for either party. *See Randolph v. PowerComm Constr., Inc.*, 309 F.R.D. 349, 364–65 (D.Md. 2015) (denying plaintiffs' and defendant's motions for summary judgment where "there is enough conflicting evidence to create a genuine dispute of fact over [an] issue").

First, considering Defendant's Motion, the Court concludes that, when viewing the evidence in the light most favorable to Plaintiff, a genuine dispute of material fact exists. While Defendant contends that the alleged policies existed, ECF No. 50-1 at 10–13, Plaintiff contends that the policies did not exist, and that Defendant's evidence is insufficient to meet the "clear and positive" evidence standard required under Maryland law, ECF No. 53 at 20–22.

In support of its argument, Defendant primarily relies upon three documents to demonstrate the existence of the alleged policies: (1) the schedule of insurance created by Defendant's insurance broker; (2) the notice of claim form; and (3) the check issued by Plaintiff in relation to the Danielson claim. ECF No. 50-1 at 10–11. Defendant also relies upon Plaintiff's "admissions" in various letters and documents, such as the issuance of the check in the Danielson claim for "[p]ro-rata share of incurred expenses," ECF No. 50-18 at 3, and a February 18, 1994 letter from

8

a claims supervisor for Plaintiff to counsel for Defendant stating that "[Plaintiff] was on the risk for only six years out of the 35 years of the alleged exposure," ECF No. 50-22 at 2.

Defendant cites *Klopman* for the proposition that secondary evidence is admissible to prove the existence of a lost writing. 233 F.App'x at 258. In that case, Klopman brought a declaratory judgment action against an alleged insurer of his rental property and sought a ruling that the insurer was obligated to defend and indemnify Klopman against lead paint litigation. *Id.* at 257. The United States Court of Appeals for the Fourth Circuit ultimately affirmed the district court's entry of summary judgment in favor of the insurer because Klopman failed to meet his burden to prove the terms of the policy, but found that Klopman met his burden to prove the existence of the policy. *Id.* at 260, 262.

To prove the existence of the policy, Klopman produced a copy of the declarations page associated with the policy and business ledgers showing two checks issued to his insurance agent for the exact amount of the premium provided on the declarations page. *Id.* at 259. Klopman also provided evidence that the insurer defended and paid a claim under the policy, including settlement documents showing that the insurer agreed to pay the claimant to release the insurer and Klopman and a "Claim Summary Information" printout which reflected the policy number, claim number, claimant, date of accident, and amount paid to indemnify the claim. *Id.* Based on this evidence, the Fourth Circuit held that Klopman had "produced sufficiently clear evidence for a reasonable fact-finder to conclude that [the insurer] issued [the] policy." *Id.* at 260.

In the instant case, unlike *Klopman*, Defendant has not produced a declarations page associated with any of the alleged policies from 1958 to 1964, nor has it produced checks or documents indicating that Defendant paid premiums on any of the policies. However, Defendant has produced evidence that Plaintiff paid a pro-rata share of damages for the Danielson claim in

1987. Specifically, Defendant has produced the check issued by Plaintiff to Tate Temco, Inc. in the amount of $833.54 for "[p]ro-rata share of incurred expenses." ECF No. 50-18 at 3. The check contains Plaintiff's name at the top and provides 05213729 as the claim number, CGL 13082 as the policy number, Charles Danielson as the claimant, Tate Temco, Inc. as the insured, and January 1, 1958 as the date of accident. *Id.* Furthermore, Defendant has produced the schedule of insurance created by Defendant's insurance broker, which shows Plaintiff provided coverage to "Tate Engineering, Inc." from September 20, 1958 through March 9, 1964. ECF No. 50-11 at 2. The schedule reflects the policy providing coverage from September 20, 1958–September 20, 1959 as CGL 13082, the same policy number listed on the check, but as Defendant correctly notes, the policy numbers for coverage stemming from September 20, 1959–September 20, 1962 are "unknown." *Id.* Defendant has also provided the notice of claim form, which reflects Charles Danielson as the claimant, 05213729 as the claim number, CGL 13082 as the policy number, date of accident as January 1, 1958, and description of accident as "liability unknown at this time (asbestos case)[.]" ECF No. 50-12 at 2.

"[I]n the face of conflicting evidence, . . . summary judgment ordinarily is not appropriate, because it is the function of the fact-finder to resolve factual disputes." *Ward v. Branch Banking & Tr. Co.*, No. ELH-13-1968, 2016 WL 2930907, at *6 (D.Md. May 17, 2016); *see also ITCO Corp v. Michelin Tire Corp., Commercial Div.*, 722 F.2d 42, 45 n.3 (4th Cir. 1983) ("The court is not permitted to resolve genuine issues of material fact on a motion for summary judgment—even where . . . both parties have filed cross motions for summary judgment." (emphasis omitted)).

Here, Plaintiff has produced documentation and expert witness testimony to contest the existence of the alleged policies. ECF Nos. 53-6, 53-8, 53-10, 53-14. As to the schedule of insurance, Plaintiff preliminarily argues that the document is not authenticated and contains

10

inadmissible hearsay because Defendants have failed to provide information regarding who prepared the document or any corroboration for the information in the document. ECF No. 53 at 13. In its response, Defendant argues that the schedule of insurance is properly authenticated pursuant to Federal Rule of Evidence 901(b)(8), which governs authentication of ancient documents. ECF No. 55 at 6. This rule states that an ancient document is authenticated when it (1) "is in a condition that creates no suspicion about its authenticity"; (2) "was in a place where, if authentic, it would likely be"; and (3) "is at least 20 years old when offered." Fed.R.Evid. 901(b)(8). Here, the schedule of insurance does not appear to be in a condition which raises questions as to its authenticity. Additionally, the document was recovered from Defendant's corporate files, ECF No. 50-2, ¶ 6, and has a handwritten notation at the top indicating that it was received on February 10, 1987, ECF No. 50-11 at 2. Therefore, the document is properly authenticated. Defendant also argues that the schedule of insurance does not contain inadmissible hearsay as the statements fall within Federal Rule of Evidence 803(16), the hearsay exception for statements in authenticated documents prepared before January 1, 1998. ECF No. 55 at 6. Here, authenticity has been established and the document is dated February 10, 1987, rendering the statements admissible.

Plaintiff next asserts that the schedule fails to establish existence of the policies because the named insured on the document is "Tate Engineering, Inc.," which is not a predecessor in interest to Defendant, and that there is no clear evidence demonstrating all Tate entities were insured under one policy during the relevant time period. ECF No. 53 at 13–15. To support these contentions, Plaintiff has produced documentation from the Maryland Workers' Compensation Commission and notes that "the proposition that all Tate entities were covered under the same policies of insurance is contradicted by the Maryland Workers' Compensation Commission, which

establishes that Tate Engineering and Temco Machine Works were insured under separate workers' compensation policies with different policy periods during the period from 1958 to 1964." *Id.* at 15 (citing ECF No. 53-10) (emphasis in original). Plaintiff also points out that that half of the alleged policy years are missing policy number information in the document. *Id.* As to the notice of claim form, Plaintiff cites its expert, Gregory G. Deimling, who notes that a claim form "is simply a form generated when a claim is made to a carrier; it is not an admission of coverage for the claim." *Id.* at 16 (citing ECF No. 53-8 at 8). Finally, as to the check, Plaintiff relies upon Mr. Deimling's expert report and an affidavit prepared by one of its senior claim examiners to demonstrate that there are other explanations for why Plaintiff may have tendered the $833.54 check to Defendant, including that Plaintiff "made a business decision to pay the *de minimis* amount . . . simply to close the file and end the matter," *id.* at 19 (citing ECF No. 53-6, ¶ 44; ECF No. 53-8 at 9), in order to avoid defending a declaratory judgment action brought by Defendant, ECF No. 53-14 at 2. Plaintiff also highlights that the check states that the payment covers incurred costs but does not state that it is payment based on coverage. ECF No. 53 at 18–19.

After considering all of the evidence, the Court concludes that there are disputes of material fact sufficient to preclude entry of summary judgment for Defendant. *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. Plaintiff's evidence raises several material questions as to the existence of the alleged policies. First, the Maryland Workers' Compensation Commission documentation seems to contradict Defendant's contention that all Tate entities were insured under the same policies. *See* ECF No. 50-2, ¶ 4. This, together with the schedule of insurance which names Tate Engineering, Inc., as the insured, ECF No. 50-11 at 2, raises a question as to whether Defendant and its predecessors were insured by Plaintiff during the relevant period at all. Additionally,

Plaintiff's expert report undermines the notice of claim form and the check as proof of the existence of the alleged policies. ECF No. 53-8 at 8–9 (explaining that claim forms are "nothing more than . . . form[s] generated when a claim is made to a carrier" and providing alternative business explanations for why the check may have been issued). Based on this contradictory evidence, entry of summary judgment for Defendant is inappropriate because a reasonable jury could return a verdict for Plaintiff. *Anderson*, 477 U.S. at 247–48; *Dulaney*, 673 F.3d at 330. Summary judgment in Defendant's favor is also inappropriate in light of *Klopman* because Defendant's evidence is not "sufficiently clear evidence for a reasonable fact-finder to conclude that [Plaintiff] issued [the] polic[ies]." 233 F.App'x at 260. Accordingly, Defendant's Motion as to existence of the alleged policies will be denied.

Following similar reasoning, Plaintiff's Cross-Motion as to existence of the alleged policies will also be denied. Plaintiff proffers that it engaged in a thorough search of its paper and electronic records but did not find any copies or records of the alleged policies. ECF No. 53-6, ¶¶ 12–19. However, as noted, the schedule of insurance, notice of claim form, check, and other letters produced by Defendant reflect that Plaintiff may have provided coverage in a prior claim and therefore could support the conclusion that the policies existed. *See, e.g.*, ECF Nos. 50-11, 50-12, 50-18. This evidence, if believed, could lead a reasonable jury to return a verdict for Defendant. Accordingly, Plaintiff's Cross-Motion will be denied.

> b. There Is A Genuine Issue Of Material Fact As To the Terms And Conditions Of The Alleged Insurance Policies.

In addition to determining the existence of the alleged policies, both parties also ask the Court to determine whether the terms and conditions of the alleged policies have been established. Defendant contends that it has produced clear and positive evidence of the terms and conditions and that summary judgment is appropriate because Plaintiff has produced no contradictory

evidence to create a genuine dispute of material fact. ECF No. 50-1 at 13. However, "[j]udgment as a matter of law is proper only if 'there can be but one reasonable conclusion as to the verdict.'" *Varghese v. Honeywell Int'l, Inc.*, 424 F.3d 411, 416 (4th Cir. 2005) (quoting *Anderson*, 477 U.S. at 250). As discussed below, the evidence presented creates competing conclusions and prevents the Court from entering summary judgment for either party.

First, considering Defendant's Motion, the Court concludes that, when viewing the evidence in the light most favorable to Plaintiff, a genuine dispute of material fact exists. While Defendant contends it has produced sufficient evidence to establish the terms and conditions of the alleged policies, ECF No. 50-1 at 13–18, Plaintiff contends that Defendant's evidence is insufficient to meet the "clear and positive" evidence standard required under Maryland law, ECF No. 53 at 22–25.

To support its argument, Defendant relies on a number of documents and its expert, Henry R. Booth, to prove the key terms and conditions of the alleged policies. First, Defendant cites to deposition testimony given in separate litigation by Plaintiff's executives and employees in which they testify that Plaintiff used an industry standard policy form during the relevant time period. ECF Nos. 50-28, 50-29, 50-30. Defendant then produces two revisions of an industry standard policy form—the 1947 revision and the 1955 revision—along with one of Plaintiff's policies issued in the 1950's to demonstrate that Plaintiff used the industry standard form language, and urges the Court to use these standard forms to reconstruct the alleged policies. ECF Nos. 50-25, 50-26, 50-31. To establish that Defendant was an insured under the alleged policies, Defendant refers to an affidavit submitted by Robert Tate, Chief Operating Officer and Executive Vice President of Defendant, which states that all Tate entities were insured under a single commercial general liability policy, as well as policy-related documents referring to different Tate entities.

ECF No. 50-1 at 16 (citing ECF Nos. 50-2, ¶ 4, 50-7, 50-8, 50-14, 50-16, 50-17). To establish the policy period, Defendant again refers to the schedule of insurance created by its broker and the check related to the Danielson claim. *Id.* at 17 (citing ECF Nos. 50-11, 50-16, 50-18). Finally, to establish the policy limits, Defendant relies upon United States Navy records which reflect that the Navy required minimum policy limits of at least $50,000 per person and at least $100,000 per accident in 1953, with the required limits increasing to $300,000 per occurrence in the mid to late 1950's. *Id.* at 17–18 (citing ECF No. 50-27). Defendant also refers to its expert report in which Mr. Booth considered the Navy's requirements in conjunction with known policy limits provided by one of Defendant's other insurers subsequent to the relevant time period and opined that "the limits for each of the Penn National policies issued to Tate Andale . . . were most likely $100,000 per person, $300,000 per accident/occurrence, and $300,000 aggregate products." *Id.* at 17 (quoting ECF No. 50-24 at 16).

In response, Plaintiff argues that Defendant's expert opinion falls short of the clear and positive evidence standard required and is insufficient in light of *Klopman*. ECF No. 53 at 22–25. As noted, in *Klopman*, the Fourth Circuit ultimately upheld the district court's entry of summary judgment in favor of the insurer because Klopman failed to produce clear evidence as to the terms and conditions of the alleged policy. 233 F.App'x at 262. In that case, Klopman attempted to prove the contents of the alleged policy through, *inter alia*, standard policy forms that the defendant insurer used and an affidavit from an experienced insurance agent opining as to the contents of the policy. *Id.* at 260–61. The Court rejected Klopman's use of the standard policy forms, stating that "[t]he record . . . contains none of these standard policy forms. Nor does the record contain an example of *any* policy [the insurer] issued the year Klopman purchased and allegedly insured [the rental property]." *Id.* at 260 (emphasis in original). However, the Court

noted that "[e]xamples of standard policy forms or contemporaneous policies issued by [the insurer] would provide evidence of the terms of Klopman's lost policy." *Id.* The Court also rejected the insurance agent's opinion as to the contents of the policy, stating that "[h]is supposition as to the policy's contents omits . . . any exceptions or unique terms . . . ." *Id.* at 261.

Here, although Defendant introduced two revisions of standard policy forms and a policy Plaintiff issued providing coverage from January 1, 1955–January 1, 1956, ECF No. 50-26 at 2, the record does not contain a policy Plaintiff issued during the time Defendant was allegedly insured (1958–1964). Furthermore, like the expert testimony in *Klopman*, Defendant's expert testimony opining as to the contents of the policy "is not evidence that leaves no reasonable doubt as to the terms and conditions of [the] policy" because it is unable to account for exceptions or unique terms the parties may have included. 233 F.App'x at 261. "No court tasked with issuing a declaratory judgment as to insurance coverage, as sought here, could consult this bare testimony to determine the limits of [Plaintiff]'s duty to defend [Defendant] or the amount [Plaintiff] might be legally obligated to pay for damages related to [asbestos litigation]." *Id.* "Because [Defendant] has failed to present evidence 'of such a character as to leave no reasonable doubt' as to the terms and conditions of [the] polic[ies]," summary judgment is inappropriate. *Id.* at 262. Accordingly, Defendant's Motion as to establishment of the terms and conditions of the alleged policies will be denied.

Similarly, Plaintiff's Cross-Motion as to establishment of the terms and conditions of the alleged policies will also be denied. As discussed, "in the face of conflicting evidence, such as competing affidavits, summary judgment ordinarily is not appropriate, because it is the function of the fact-finder to resolve factual disputes." *Ward*, 2016 WL 2930907, at *6. Here, Defendant has produced some evidence as to the terms and conditions of the alleged policies through its

expert's testimony, but Plaintiff's expert contradicts that testimony, pointing out inconsistencies and weaknesses, ECF No. 53-8 at 12–13. The case cannot be resolved without weighing the contrasting expert opinions and determining whether the terms and conditions of the alleged policies are sufficiently established. Thus, the Court concludes that if a jury were to credit Defendant's expert and discredit Plaintiff's expert regarding the terms and conditions of the policy, a jury could reasonably return a verdict in Defendant's favor. Accordingly, Plaintiff's Cross-Motion as to establishment of the terms and conditions of the alleged policies will be denied.

2. Summary Judgment Is Inappropriate On The Breach Of Contract Counterclaim.

In addition to seeking summary judgment on the declaratory judgment claim, both parties also seek summary judgment on Defendant's breach of contract counterclaim. Plaintiff raises several arguments as to this claim, including that Defendant is barred from recovery because it failed to notify or seek Plaintiff's consent to the alleged settlements. ECF No. 53 at 25–31. Defendant does not specifically address its counterclaim in its Motion but argues in its reply that Plaintiff is unable to establish actual prejudice based on late notice. ECF No. 55 at 24–28.

"Under Maryland law, to establish a breach of contract, there must be a contractual obligation owed . . . and a material breach of that obligation." *J.E. Dunn Constr. Co. v. S.R.P. Dev. Ltd. P'ship*, 115 F.Supp.3d 593, 600 (D.Md. 2015) (citing *RRC Ne., LLC v. BAA Md., Inc.*, 994 A.2d 430, 442 (Md. 2010)). As discussed *supra*, there are questions of material fact in this case regarding both the existence and the contents of the alleged insurance policies which prevent this Court from determining whether a contractual obligation was owed by Plaintiff to indemnify Defendant and whether there was a breach of any such obligation. Accordingly, Defendant's Motion and Plaintiff's Cross-Motion as to breach of contract must be denied.

## CONCLUSION

For the reasons set forth in this Memorandum Opinion, the Court finds that there is a genuine issue of material fact with regard to the existence and terms of the commercial liability insurance policies allegedly issued by Plaintiff as well as to breach of contract. Therefore, Defendant's Motion (ECF No. 50) is DENIED and Plaintiff's Cross-Motion (ECF No. 52) is DENIED. A separate order will follow.

Date: 7 January 2019

A. David Copperthite
United States Magistrate Judge