IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

PENNSYLVANIA NATIONAL MUTUAL     *
CASUALTY INSURANCE COMPANY,     *
    *
          Plaintiff,     *
    *
       vs.     *       Civil Action No. ADC-17-670
    *       UNDER SEAL
TATE ANDALE, INC.     *
    *
         Defendant.     *
    *

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff Pennsylvania National Mutual Casualty Insurance Company ("Penn National") moves this Court for summary judgment (the "Motion") (ECF No. 136) on all claims in its Amended Complaint (ECF No. 105) and in Defendant Tate Andale, Inc.'s ("Tate Andale") Amended Counterclaim (ECF No. 106). Tate Andale responded in opposition (ECF No. 138), and Penn National replied (ECF No. 140). After considering the Motion and responses thereto, the Court finds that no hearing is necessary.[1] Loc.R. 105.6 (D.Md. 2021). For the reasons stated herein, the Court finds that there are no genuine issues of material fact as to the claims asserted, and Penn National's Motion is GRANTED.

## FACTUAL BACKGROUND

This lawsuit arises out of a controversy surrounding the alleged existence of commercial liability insurance policies and their terms, conditions, limitations, exclusions, definitions, and other provisions. ECF No. 105 ¶ 5. Tate Andale is a Maryland corporation that was incorporated

---

[1] On March 13, 2018, this case was referred to United States Magistrate Judge A. David Copperthite for all proceedings in accordance with 28 U.S.C. § 636 and Local Rules 301 and 302 (D.Md. 2021). ECF No. 27.

in 1957 under the name Temco Machine Works, Inc. *Id.* ¶ 8. Temco Machine Works changed its name to Tate Temco, Inc. in 1966. *Id.* ¶ 9. Tate Temco then purchased the Andale Company in 1985 and changed its name for the final time to Tate Andale. *Id.* ¶ 10–11. Tate Andale is a company that manufacturers industrial products and previously "used asbestos-containing materials in [its] industrial processes and/or products." *Id.* ¶ 12; ECF No. 136-1 at 1. Penn National is a mutual insurance company headquartered in Pennsylvania. ECF No. 105 ¶ 1; ECF No. 136-1 at 1. Penn National's predecessor was Pennsylvania Threshermen's and Farmer's Mutual Casualty Company ("Threshermen"). ECF No. 105 ¶ 14.

On October 17, 2016, Tate Andale wrote to Penn National and claimed that Penn National and Threshermen had issued commercial general liability insurance policies to Tate Andale for effective dates from September 20, 1958, to March 9, 1964 (the "Alleged Policies"). *Id.* ¶¶ 13–14. Tate Andale claimed that Penn National, on behalf of itself and Threshermen, was obligated to indemnify it for certain asbestos claims that arose from the alleged coverage period. *Id.* ¶ 14. On December 6, 2016, Tate Andale again wrote to Penn National, explaining that it had settled multiple asbestos-related claims within the coverage of the alleged policies for $1,720,000 and $1,606,106 in defense costs. *Id.* ¶¶ 15–17. Tate Andale demanded that Penn National "immediately acknowledge and fulfill its coverage obligations" for its pro rata share in the defense. *Id.* Penn National searched its business records and was unable to find any commercial liability insurance policies issued to Tate Andale, Temco Machine Works, or Tate Temco. *Id.* ¶¶ 20–21.[2]

The parties identify a number of documents at issue with respect to the existence of the Alleged Policies, namely: an insurance schedule of coverage for "TATE ENGINEERING, INC.,

---

[2] Tate Andale does not possess insurance records from the period at issue because they were destroyed in a fire in 1965. ECF No. 138 at 7. Similarly, Penn National's record retention policy only requires policy documents be retained for 25 years after the expiration of the policy. *Id.* at 20.

2

ETAL" [sic] from 1958 to 1964 prepared in 1981 by Tate Andale's insurance broker, the Jennings Insurance Associates, Inc. (the "Jennings List"); a 1987 notice of claim form related to asbestos litigation involving Charles Danielson (the "Danielson litigation"); a check from Penn National to Tate Temco for $833.54—the amount identified as Penn National's pro rata contribution for costs in the Danielson litigation;[3] and a February 18, 1994 letter from Penn National concerning asbestos litigation involving Tate Enterprises. ECF No. 136-1 at 15–20; ECF No. 138 at 7–11. Similarly, the parties identify evidence at issue with respect to the terms and conditions of the Alleged Polices, specifically Tate Andale's expert witness, David O'Neill's testimony; a 1955 standard form promulgated by the National Bureau of Casualty Underwriters ("NBCU"); and two "exemplar" Threshermen policies from 1953 and 1955 for other insureds. ECF No 136-1 at 15–24; ECF No. 138 at 13–19. NBCU was an insurance bureau—"a collection of insurance companies that would group together and prepare common forms to use in insurance policies"—comprised of stock insurance companies. ECF No. 136-1 at 17.

## PROCEDURAL BACKGROUND

On March 9, 2017, Penn National filed this lawsuit against Tate Andale, seeking declaratory judgment that Penn National owes no duty under law or the Alleged Polices to indemnify or defend Tate Andale for the time period at issue.[4] ECF No. 1. On February 21, 2018, Tate Andale filed an answer and counterclaim. ECF No. 22. The counterclaim sought declaratory judgment that Penn National issued the commercial general liability insurance policies to Tate Andale and is obligated to provide liability coverage for costs associated with past, present, and

---

[3] This amount was communicated to Penn National by the Hartford Insurance Company ("Hartford"), Tate Andale's commercial liability insurer since 1970. ECF No. 138 at 7, 10.
[4] On May 12, 2017, Tate Andale filed a motion to dismiss Penn National's reservation of rights count. ECF No. 8. The Court granted Tate Andale's motion. ECF No. 21.

3

future asbestos litigation related to the alleged coverage period. ECF No. 22. The counterclaim also included a claim for breach of contract.[5]

In October of 2018, Tate Andale and Penn National filed cross motions for summary judgment. ECF Nos. 50, 52. The Court denied the cross motions, finding a genuine issue of material fact existed with regard to the existence of the Alleged Policies and the terms and conditions thereof. ECF Nos. 59, 60. With leave of the Court, Penn National then filed an Amended Complaint (ECF No. 105), seeking declaratory judgment that Penn National owes no duty to indemnify or defend Tate Andale (Count I), and declaratory judgment as to insurance coverage for tort claims involving the Andale Company products (Count II). Tate Andale answered the Amended Complaint and filed an Amended Counterclaim (ECF No. 106), seeking declaratory judgment that Penn National is obligated to provide liability coverage in accordance with the Alleged Policies (Count I), and alleging breach of contract for Penn National's denial of coverage to Tate Andale (Count II). Penn National now brings the present Motion for Summary Judgment, seeking judgment on all of its claims and Tate Andale's counterclaims. ECF No. 136. Tate Andale responded in opposition (ECF No. 138), and Penn National replied (ECF No. 140).

DISCUSSION

**A. Standard of Review**

Pursuant to Rule 56, a movant is entitled to summary judgment where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(a). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48

---

[5] Tate Andale's complaint originally contained a statutory claim for failure to act in good faith pursuant to Md. Code Ann., Cts. & Jud. Proc. § 3-1701. Penn National moved to dismiss (ECF No. 32), and the Court granted the motion in part with respect to the statutory claim. ECF No. 37.

(1986) ("[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." (emphasis in original)). An issue of fact is material if, under the substantive law of the case, resolution of the factual dispute could affect the outcome. *Anderson*, 477 U.S. at 248. There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id. See Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012). On the other hand, if after the Court has drawn all reasonable inferences in favor of the nonmoving party, and "the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (citations omitted).

The party seeking summary judgment bears the initial burden of establishing either that no genuine issue of material fact exists or that a material fact essential to the non-movant's claim is absent. *Celotex Corp.*, 477 U.S. at 322–24. Once the movant has met its burden, the onus is on the non-movant to establish that there is a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In order to meet this burden, the non-movant "may not rest upon the mere allegations or denials of [its] pleadings," but must instead "set forth specific facts showing that there is a genuine issue for trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting Fed.R.Civ.P. 56(e)).

### B. Penn National's Motion for Summary Judgment

Penn National contends that summary judgment is warranted because: (1) Tate Andale has not provided clear and convincing evidence of the terms, conditions, limitations, exclusions, and policy limits for the Alleged Policies; (2) Tate Andale has not proven by clear and convincing evidence that the Alleged Policies were issued; and (3) Tate Andale is barred from recovering for

5

the fourteen Original Underlying Claims it settled prior to providing notice to Penn National. ECF No. 136-1 at 15, 24, 31. In response, Tate Andale asserts that the Alleged Policies, and the terms and conditions thereof, are materially disputed questions of fact, that a reasonable jury can and will conclude it provided sufficient evidence to meet the clear and convincing evidence standard, and that Tate Andale's late notice as to the claims does not prohibit recovery. ECF No. 138 at 5, 13, 26. More than three years have passed since the parties filed their prior cross motions for summary judgment. Since then, the parties have had the benefit of additional discovery, including the deposition of Tate Andale's key expert witness, and the Maryland Court of Special Appeals has provided greater guidance on the evidentiary standard that Tate Andale must meet as the proponent of the Alleged Policies. For the reasons that follow, I now find Penn National's arguments compelling.

The instant case concerns a diversity dispute between parties to an alleged insurance contract, thus "Maryland law governs as to the burden of proof [the proponent of the Alleged Policies] must meet." *Klopman v. Zurich Am. Ins. Co. of Illinois*, 233 F.App'x 256, 258 (4th Cir. 2007). Under Maryland law, "the proponent of a lost insurance policy 'must establish the fact of loss and the terms and conditions of the policies by 'clear and positive' evidence." *Id.* (quoting *In re Wallace & Gale Co.*, 275 B.R. 223, 230 (D.Md. 2002)). "The evidence necessary to establish a lost instrument and to prove its contents must be clear and positive and of such a character as to leave no reasonable doubt as to its terms and conditions." *Barranco v. Kostens*, 189 Md. 94, 98 (1947) (citations omitted). Recently, the Maryland Court of Special Appeals clarified that the "correct evidentiary burden is 'the clear and convincing' standard," which does not require proof beyond a reasonable doubt. *Dasher v. Ransom*, No. 326, Sept. Term, 2018, 2021 WL 3013352, at *5, 7 (Md.Ct.Spec.App. July 15, 2021), *cert. denied,* 476 Md. 420 (2021) ("[P]laintiff's burden in

such cases is to prove a prima facie case by clear and convincing evidence, and not, as appellant contends, by removing all reasonable doubt as the law requires in criminal cases."). The court identified several definitions for the clear and convincing evidence standard. "[E]vidence should be 'clear' in the sense that it is certain, plain to the understanding, and unambiguous and 'convincing' in the sense that it is so reasonable and persuasive as to cause you to believe it." *Id.* at *7 (quoting Lynn McLain, *Maryland Evidence State and Federal* § 300:4(ix.) at 319 n.38 (3d ed. 2013)). "[P]laintiff must persuade the jury that the truth of his contention is 'highly probable,' not 'merely probable.'" *Id.* (quoting *Spengler v. Sears*, 163 Md.App. 220, 247 (2005), *cert. denied*, 389 Md. 126 (2005)).

The United States Court of Appeals for the Fourth Circuit's decision in *Klopman* provides guidance. 233 F.App'x at 257. The district court had granted summary judgment for the insurer, and the issue for the Fourth Circuit was whether the plaintiff (the proponent of the alleged policy) had "proven by 'clear and positive' evidence that he had an insurance policy" with the insurer. *Id.* Ultimately, the Fourth Circuit affirmed the lower court's decision because, while the plaintiff had "produced sufficiently clear evidence for a reasonable fact-finder to conclude that [the insurer] issued [the] policy," he had not "produced similarly clear evidence as to the terms and conditions" of the policy at issue. *Id.* at 260. The clear evidence the plaintiff offered to show the existence of the policy included a copy of the policy's declarations page that named both the plaintiff as the insured and the defendant as the insurer, business ledgers showing two checks the plaintiff issued to his insurance agent for the premium amount, and evidence that the insurer defended and paid a claim under the policy. *Id.* at 259.

The plaintiff attempted to prove the contents of the alleged policy through, *inter alia*, testimony that the insurer used standard forms and an affidavit from an experienced insurance

7

agent opining as to the contents of the policy. *Id.* at 260–61. The Fourth Circuit explained that "[t]he record . . . contain[ed] none of these standard policy forms. Nor [did] the record contain an example of *any* policy [the insurer] issued the year [the plaintiff] purchased and allegedly insured [the property]." *Id.* at 260 (emphasis in original). However, "[e]xamples of standard policy forms or contemporaneous policies issued by [the insurer] would provide evidence of the terms of [the plaintiff's] lost policy." *Id.* The Fourth Circuit rejected the insurance agent's opinion as to the contents of the policy, stating that "[h]is supposition as to the policy's contents omits . . . any exceptions or unique terms [the policy] might have contained." *Id.* at 261. "No court tasked with issuing a declaratory judgment as to insurance coverage, as sought here, could consult this bare testimony to determine the limits of" the insurer's legal obligation as to damages. *Id. See In re Wallace & Gale Co.*, 284 B.R. 553, 556 (D.Md. 2002), *amended,* No. 85-A-0092, 2002 WL 32122507 (D.Md. Oct. 10, 2002) (explaining that the "evidence as to the terms and conditions of the policies remains nothing more than a supposition by their expert that [the defendant insurer] used" a standard policy form).

Here, as in *Klopman*, the question before the Court is whether Tate Andale has failed to provide clear and convincing evidence as to the existence of the Alleged Policies and their terms and conditions such that no reasonable jury could find for Tate Andale. Penn National has met its burden to show that there are no genuine disputes of material fact, and Tate Andale has failed to establish otherwise. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 586. Based on the evidence presented, I find that as a matter of law, Tate Andale cannot meet the clear and convincing evidence standard required to prove the existence and terms and conditions of the Alleged Policies. Accordingly, Penn National is entitled to judgment as a matter of law.

8

1. Existence of the Alleged Policies

Tate Andale contends that a reasonable jury can and will conclude that it has provided ample evidence as to the existence of the Alleged Policies according to the clear and convincing evidence standard. ECF No. 138 at 5. It asserts "overwhelming" secondary evidence of the Alleged Policies exists, primarily the Jennings List, a 1986 notice of claim form, a June 26, 1987 letter from Penn National agreeing to pay its pro rata contribution to the Danielson litigation, and the accompanying check. *Id.* at 5–11. In contrast, Penn National asserts that the Jennings List names the insured as Tate Engineering, but Tate Andale "unequivocally testified that it did not have knowledge to support [the] claim" that Robert Tate purchased the same insurance policies for Tate Engineering and Temco Machine Works. ECF No. 136-1 at 26 (emphasis omitted). It claims that such an assertion is based on assumption and is contradicted by the fact that Tate Engineering and Temco Machine Works were insured under separate Maryland Workers' Compensation policies. *Id.* at 28. Among other issues with the Jennings List, *see id.* at 28–31, Penn National claims that it does not name Temco Machine Works or any other Tate Andale predecessor, nor does it contain policy numbers for three of the six years the Alleged Policies were supposed to exist. *Id.* at 25, 29. Finally, Penn National contends that the Danielson litigation evidence is not compelling because the notice of claim form is autogenerated with information provided by a broker, and the payment "was more likely a decision to pay a *de minimis* defense expense rather than expending attorneys' fees contesting coverage." *Id.* at 30–31.

As explained *supra*, Tate Andale bears the burden of establishing "the fact of loss and the terms and conditions of the policies by 'clear and positive' evidence.'" *Klopman*, 233 F.App'x at 258. The burden is that of clear and convincing evidence. *See Dasher*, 2021 WL 3013352, at *7. Indeed, Tate Andale must present "clear" evidence for the existence of the Alleged Policies; it must be "certain, plain to the understanding, and unambiguous and convincing in the sense that it

9

is so reasonable and persuasive as to cause you to believe it." *Id.* (citations omitted). That is not the case here. Tate Andale's evidence would require the Court find an incomplete list compiled decades after the Alleged Policies would have existed that does not name Tate Andale's predecessor in interest (Temco Machine Works) to be clear and convincing evidence that Penn National issued the Alleged Policies. This evidence is further weakened by the fact that Temco Machine Works and Tate Engineering were insured under separate workers' compensation policies at this same time. Moreover, Penn National's argument with respect to the Danielson litigation evidence is compelling: the notice of claim form was automatically generated based on information from the broker, and the check was for a *de minimis* amount. These records are not so clear and certain as to make the existence of the Alleged Policies highly probable.[6] *See Dasher*, 2021 WL 3013352, at *7 (citation omitted). The presented evidence here is much less compelling than the evidence the plaintiff provided in *Klopman*—a declarations page that identified the relevant policy, time period, and parties. Accordingly, I conclude as a matter of law that a reasonable jury could not find that Tate Andale had produced sufficient evidence to show the existence of the Alleged Policies under the required standard.

### 2. Terms and Conditions of the Alleged Policies

Even assuming *arguendo* that there was a genuine issue of material fact as to the existence of the Alleged Policies, Tate Andale's evidence as to the Alleged Policies' terms and conditions still fails to meet the clear and convincing evidence standard as a matter of law. Tate Andale asserts

---

[6] Tate Andale identified additional records but these similarly do not, even when viewed with the above referenced records, provide clear evidence of the Alleged Policies. Much of the communication to Penn National (e.g., by Hartford) relied upon information identified by the Jennings List. *See* ECF No. 138 at 8–11. Further, the other Penn National correspondence is not compelling for the same reasons as with respect to the records related to the Danielson litigation. *See id.*; ECF No. 136-1 at 29. Tate Andale's argument is one of minimally compelling evidence and assumptions that together amount to clear and convincing evidence. The Court disagrees.

10

that the "'secondary evidence' showing the terms of the Alleged Policies is overwhelming," and a reasonable jury can and will conclude that it has provided ample evidence as to the terms and conditions to meet the clear and convincing evidence standard. ECF No. 138 at 13. Tate Andale relies heavily on its expert's testimony about a 1955 standard policy form used by NBCU that was printed by Insurance Services Office ("ISO").[7] *Id.* at 13–17. In support of the standard policy form, Tate Andale directs the Court to Penn National's deposition testimony in a different case that it used (and did not change) exclusively ISO forms from 1956 to 1968, and to two exemplar Thresherman policies that show Penn National used the standard form at issue.[8] *Id.* Penn National challenges Tate Andale's expert's testimony related to the NBCU, because Penn National was not a member of NBCU (which Tate Andale appears to concede). ECF No. 136-1 at 18. However, Tate Andale asserts that the expert also testified that the NBCU standard form would have been the same as the one Penn National used. ECF No. 138 at 14–15.

Tate Andale's allegations about the terms and conditions of the Alleged Policies rely upon the 1955 standard form. The form was printed by ISO in the 1990s based on the forms of its predecessor insurance bureau, NBCU. Penn National was not a member of NBCU, and Tate Andale's expert did not know which insurance bureau Penn National belonged to during the time at issue. Tate Andale claims that it does not matter whether Penn National was a member of NBCU, because Mr. O'Neill testified that a standard form from an insurance bureau for stock insurance companies would have been identical to a standard form from an insurance bureau for mutual

---

[7] NBCU, along with the Insurance Rating Board, were ISO's predecessors. ECF No. 138 at 14; ECF No. 136-12 at 238–39.

[8] Tate Andale asserts that the two Threshermen policies were "offered only to show that Penn National used ISO-standard forms in 1953 and 1955," not for the terms of the Alleged Policies. ECF No. 138 at 15. Therefore, the Court need not address Penn National's arguments challenging the use of the policies "to prove the terms, conditions, limitations, and exclusions" for the Alleged Policies. ECF No. 136-1 at 18.

insurance companies. However, Tate Andale's argument that its expert testified that the forms would have been the same is not compelling. While Mr. O'Neill did state that the bureau forms were identical, he also testified earlier that he did not know whether a mutual insurance bureau would use the same policy form as NBCU. *See* ECF No. 136-12 at 232–33 ("Q[:] . . . [B]etween 1958 and 1964, did all these [different insurance] bureaus use the same CGL policy form? A[:] Well, I don't – as I sit here, I'm not prepared to tell you what [a specific mutual insurance bureau] was doing back then.") ("Q[:] Do you know when the National Bureau of Casualty Underwriters and the other mutual insurance bureau used the same form and when they used a different form? A[:] I can look it up."). Tate Andale's argument is thus that a standard policy form identified in 1991 by an insurance bureau not affiliated with Penn National provides clear and convincing evidence to the terms and conditions of the Alleged Policies. And the expert—who did not identify which insurance bureau Penn National belonged to—provided, at best, ambiguous testimony that a standard policy form from an insurance bureau for mutual insurance companies would have the same terms and conditions as that from an insurance bureau for stock insurance companies (like NBCU).[9] This evidence, even when taken together with Penn National's deposition testimony in another matter, certainly falls short of the clear and convincing standard of evidence to show the existence of the terms and conditions of the Alleged Policies.

While it is true that the Fourth Circuit noted that standard policy forms or contemporaneous policies issued by the insurer provides evidence as to the terms and conditions of the Alleged Policies, that does not mean that the standard is met by these in the present case. As discussed

---

[9] Tate Andale's argument that it was a Navy vendor during the time period at issue and thus had to maintain minimum policy limits does not compel a different result. *See* ECF No. 138 at 17. Even assuming Temco Machine Works was a Navy vendor (which Penn National takes issue with), *see* ECF No. 140 at 11, alleged minimum coverage requirements do not address all of the relevant terms and conditions of the Alleged Policies.

12

*supra*, the proposed evidence is not sufficiently clear and unambiguous to satisfy the clear and convincing evidence standard, especially when considering it all together. The identified evidence relies on assumptions and ambiguous expert testimony and thus fails to meet the clear and convincing evidence standard as a matter of law. Moreover, the same issue exists here as in *Klopman*: relying heavily on an expert's speculation about the Alleged Policies terms and conditions "omits . . . any exceptions or unique policy terms" that the Alleged Policies might have contained. 233 F.App'x at 261. When "tasked with issuing a declaratory judgment as to insurance coverage," the Court cannot "consult this bare testimony to determine the limits of" the Alleged Policies. *Id.*

The bottom line is that in *Klopman*, there was at least a declaration page that identified the actual parties, proof of two checks issued under the policies, and evidence the insurer defended and paid a claim under the policy at issue. Here, Tate Andale offers nothing that the Court can rely upon to say by clear and convincing evidence that "yes" the policy existed. Even if there was such evidence to meet the clear and convincing standard, the Court is left with conjecture and lukewarm supposition as to any terms and conditions that existed regarding the Alleged Policies between the parties. There is no clear and convincing proof upon which the Court may rely to enforce the terms and conditions of the ghost policies. By all means, *Klopman* fully supports this Court's decision. Summary judgment in favor of Penn National is thus warranted with respect to all claims and counterclaims.[10]

---

[10] Because the Court concludes that no reasonable jury could find that the Alleged Policies existed, it need not consider Penn National's remaining argument with respect to the fourteen previously settled Original Underlying Claims.

## CONCLUSION

For the reasons set forth in this Memorandum Opinion, Penn National's Motion for Summary Judgment (ECF No. 136) is GRANTED. A separate Order will follow.

Date: 29 April 2022

A. David Copperthite
United States Magistrate Judge

14